**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

---

**A.T. PRUITT, III,**

**Plaintiff,**

**v.** **Case No. 1:24-cv-1168-STA-tmp**

**JEREMY SHEPARD, et al.,**

**Defendants.**

---

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff A. T. Pruitt, III, an inmate at Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee, filed a pro se § 1983 complaint alleging violations of his civil rights. The Court dismissed all of Plaintiff's claims except for his Eighth Amendment failure-to-protect claim against CoreCivic.[1] (ECF Nos. 7 & 8.) Defendant CoreCivic has filed a motion for summary judgment (ECF No. 40), and Plaintiff has filed a response to the motion. (ECF No. 41.) Thereupon, Defendant filed a reply to the response. (ECF No. 42.) After several discovery disputes that have now been resolved, this matter is now ripe for determination. For the reasons set forth below, Defendant's motion is **GRANTED**.

## Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

[1] CoreCivic is a private company that manages HCCF, a prison that houses inmates in the custody of the Tennessee Department of Correction ("TDOC").

R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review all the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court "may not make credibility determinations or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

When the motion is supported by documentary proof such as depositions and affidavits, the non-moving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014). These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

As an initial matter, the Court will examine Plaintiff's objections to Defendant's use of the declaration of Warden Demetric Godfrey (ECF No. 40-3) to support its statement of facts. Plaintiff points out that Godfrey was not HCCF's warden at the time of the alleged constitutional violations. Warden Godfrey's declaration describes, *inter alia*, the policies and procedures of HCCF related to protective custody of inmates, staff training as to how to respond to inmate-on-inmate violence, training for medical staff in responding to inmate injuries, and how

investigations of inmate-on-inmate violence should be conducted. Plaintiff argues that Warden Godfrey is "attempt[ing] to offer a narrative interpretation of the March 26, 2024 incident as if he were an eyewitness." (Resp. p. 1, ECF No. 41.) Plaintiff particularly objects to Warden Godfrey's characterization of the incident as a "fight." (*Id.*)

The Court agrees with Defendant that, as Warden of HCCF, Godfrey is familiar with TDOC and HCCF policies at the facility. Because the policies discussed in his declaration were the same at the time of the alleged incident, Warden Godfrey has personal knowledge of the applicable TDOC and HCCF policies at issue, and his testimony regarding those policies is relevant and admissible. Moreover, as Warden, he has access to incident reports and related materials concerning incidents that take place at the facility — including those predating his hire date, and he can testify as to content of those reports. However, those documents speak for themselves, and the Court has disregarded any interpretations by Warden Godfrey as to the contents of the reports and any opinion by him as to whether proper procedures were followed.

Plaintiff also complains that Defendant failed to produce video surveillance footage of the incident. He asserts that the footage shows that Officer Stewart did not call the unit team for assistance as she was trained to do but, instead, waited until the assault was over. In an order denying Plaintiff's motion to compel and for sanctions, Magistrate Judge Tu M. Pham determined that "the video evidence was deleted as a result of a 'routine, good-faith operation of an information retention system' before the duty to preserve attached, [and] no sanctions are warranted based on the deletion of the video evidence." (Mag J. Ord. p. 20, ECF No. 50.)

As for the non-video evidence sought by Plaintiff, such as statements from staff members who were witnesses to the altercation and disciplinary records regarding the facility's decision not to pursue charges against Plaintiff, Magistrate Judge Pham determined that HCCF had no

duty to preserve evidence prior to July 17, 2024, the date that HCCF received Plaintiff's first grievance. (*Id.* at pp. 18-19.) He then found that the records at issue were subject to a three-year retention policy and that HCCF had failed to take reasonable steps to preserve this non-video evidence." (*Id.* at pp. 20-21.) But, Magistrate Judge concluded that Plaintiff was not prejudiced by the loss of the documents.

> As to the photographs and his disciplinary records relating to the March 26 stabbing, Pruitt has not explained what these photographs might show or how these photographs or his disciplinary records would assist him with proving his failure-to-protect claim. Furthermore, CoreCivic does not contend that Pruitt received any discipline for the March 26 stabbing. As for the witness statements, there is no indication as to what they may have contained or how they would help his case. There is also no indication that Pruitt was prevented from getting these witnesses' accounts of the March 26 stabbing during the discovery period. Finally, there is insufficient evidence to show that CoreCivic intentionally destroyed these documents. The only evidence in the record regarding these missing records is the declaration of Warden Godfrey, who avers that HCCF employees "undertook diligent efforts" to search for these documents and could not find them in the investigative packet or elsewhere. Without any evidence of intent to deprive Pruitt of these documents, the court cannot impose the sanction of an adverse inference instruction under Rule 37(e).

(*Id.* at pp. 22-23.)

Neither party appealed Magistrate Judge Pham's ruling, and the time in which to do so has passed. Accordingly, the Court has disregarded Plaintiff's complaints about the video and the witness statements in ruling on the motion for summary judgment.

**<u>Statement of Undisputed Material Facts</u>**

Pursuant to the Local Rules of this Court, the parties are directed to prepare statements of material facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local Rule 56.1(a). A fact is material if it "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994), and *Anderson,* 477 U.S. at 247–48). A

dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite to particular parts of the materials in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1). The non-moving party must respond to the movant's statement of fact "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." Local Rule 56.1(b). Additionally, the non-movant may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

If the non-movant asserts that a genuine dispute of material fact exists, it must support its contention with a "specific citation to the record." Local Rule 56.1(b). If a party fails to demonstrate that a fact is disputed or fails to address the opposing party's statement of facts properly, the Court will "consider the fact undisputed for purposes" of ruling on the motion. Fed. R. Civ. P. 56(e)(2); *see also* Local Rule 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."). Under Rule 56 of the Federal Rules of Civil Procedure, the Court "need consider only the cited materials" but has discretion to "consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Defendant has submitted a statement of facts (ECF No. 40-2). Plaintiff did not submit an additional statement of facts. To the extent that Plaintiff did not properly respond to Defendant's

facts, those facts are deemed undisputed. The Court has disregarded any inadmissible evidence in making its decision.

Plaintiff alleges as follows. On March 26, 2024, he was housed in a protective custody unit at HCCF when Correction Officer Kaylin Stewart opened Plaintiff's cell after inmate Corey Gilliam told Stewart that Plaintiff was wanted in the caseworker's office. After Plaintiff returned, Gilliam and Plaintiff engaged in an argument. Gilliam and two other inmates then followed Plaintiff into his cell where Gilliam threatened to kill him. Plaintiff walked out of his cell to report the threat. Plaintiff alleges that he tried to defend himself as Gilliam stabbed him with a shank in both of his arms, his neck, and his back while Officer Stewart watched without trying to help. She allegedly did not call the unit team for assistance as she was trained to do but, instead, waited until the assault was over. Eventually, the door was opened and Gilliam was pulled out. Plaintiff alleges that his injuries were so severe that he had to be air flighted to Regional One Hospital for emergency surgery.

The Court finds that there is no genuine dispute as to the following facts unless otherwise noted.[2]

At all times relevant, Plaintiff was an inmate incarcerated at HCCF. Plaintiff and inmate Corey Gilliam were housed in G Unit, Pod C ("GC") at HCCF. GC was designated as a protective custody pod.

On March 26, 2024, an altercation took place between Plaintiff and Gilliam (#243447) at HCCF.[3] HCCF staff responded to the altercation and directed Plaintiff and Gilliam to cease

---

[2] All facts are stated for the purpose of deciding this motion only.

[3] Plaintiff objects to Defendant's description of the incident as a "fight" as opposed to an assault upon Plaintiff by Gilliam. Regardless of the term used, the record shows that there was an altercation during which Plaintiff was seriously injured. In fact, an email written by former HCCF employee Charles Farmer (a Shift Supervisor), dated March 26, 2024, at 1:35 p.m., which

fighting, but both inmates refused. After staff used chemical agents, Plaintiff and Gilliam stopped fighting.

HCCF staff provided emergency medical treatment to Plaintiff and sent Plaintiff offsite for additional medical treatment. HCCF's Incident Report states that after being stabbed, "Pruitt was expedited to medical due to the nature of his injuries . . . [and] the decision was made by Health Services administrator Rebecca Franks to have inmate Pruitt sent to outside medical for additional treatment." (ECF No. 31-1.) The report further states that "Pruitt sustained a laceration to the neck and underside of his chin with profuse bleeding/hypovolemia secondary to blood loss - considered to be life threatening" and was "life flighted" for outside medical treatment. (*Id.*) Another report written on the same day of the incident states that "Inmate Pruitt was transported by helicopter due to sustaining a puncture wound to his neck underneath his chin and [was] bleeding profusely. He has sustained a significant blood loss [and] was in critical condition prior to transport." (ECF No. 37-2.)

Plaintiff never communicated any specific fear for his safety posed by Gilliam to any HCCF staff member before the fight/altercation occurred. Plaintiff had no issues or problems with Gilliam before March 26, 2024. No threat to Plaintiff's safety related to Gilliam existed until the fight/altercation occurred on March 26, 2024. No HCCF staff member had any knowledge of a specific risk of harm to Plaintiff related to Gilliam before March 26, 2024.

HCCF policies are promulgated and approved by the TDOC and are fully approved and accredited by the American Correctional Association ("ACA").

TDOC and CoreCivic policy provides that, when information is received which indicates an inmate may be in danger of harm from other inmates, HCCF officials immediately provide the

---

purports to describe what he observed on at least one of the surveillance videos uses the term "physical altercation." (ECF No. 31-1 at PageID 168.)

threatened inmate protection. HCCF provides inmates with multiple avenues for inmates to report fears, concerns, or threats from other inmates to obtain any needed protection.

HCCF's protective services policy provides that a list of incompatible inmates be maintained for each inmate. Any inmates who are identified as incompatible with each other cannot be housed together per HCCF policy.

While an inmate is in protective custody, HCCF policy requires staff to ensure that the inmate has no contact with any inmate known to pose a potential threat to the inmate. Before March 26, 2024, Plaintiff and Gilliam were not identified as being incompatible or otherwise identified as needing to be housed in different areas of the facility.

If HCCF staff had been aware of any information indicating that Gilliam presented a known risk of harm to Plaintiff, policy required staff to provide Plaintiff protection from Gilliam and to ensure that Plaintiff and Gilliam would not be housed in the same area of the facility.

TDOC and HCCF policy strictly prohibit HCCF employees from promoting, endorsing, supporting, condoning, furthering, excusing, tolerating, instigating, facilitating, or intentionally or willfully ignoring or disregarding inmate violence at HCCF. Any HCCF staff member who participates in any such action or inaction related to inmate violence is subject to investigation and disciplinary action, including, but not limited to, termination.

All correctional officers receive training in accordance with CoreCivic and TDOC policy, including training concerning CoreCivic and TDOC's protective custody policies. Correctional officers at HCCF are trained in accordance with policy to respond to instances of inmate-on-inmate violence at the facility.

For example, HCCF trains its officers to call an emergency code so other staff members may respond to the situation, to use verbal commands to gain compliance of inmates engaged in

violent behavior, and to use force when necessary to protect the inmates involved.

HCCF staff are not permitted to stand idly by and allow an inmate fight or an inmate-on-inmate assault to continue if there is a safe means for the staff to intervene and attempt to bring the fight or assault to end. If any HCCF staff member did stand idly by and allow an inmate fight or an inmate-on-inmate assault to continue when there was a safe means for the staff to intervene and attempt to bring the fight or assault to end, doing so would violate HCCF policy and would subject that staff to discipline.

No CoreCivic employee has the authority to transfer inmates to other TDOC facilities. The TDOC is solely responsible for and empowered to transfer inmates to other TDOC facilities.

All inmates at HCCF are required to follow HCCF inmate rules implemented for the safety and security of the facility. HCCF inmate rules include prohibition of any inmate fighting or any other violent activity. Any inmate who violates any inmate rule at HCCF is subject to disciplinary action at the facility.

HCCF follows TDOC policy that allows inmates to submit a written complaint/grievance concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within HCCF, which personally affects the inmates.

Within each grievance, inmates are afforded the opportunity to specify the relief they seek related to their complaints within the "requested solution" portion of each submitted grievance form. Pursuant to TDOC Policy, an inmate grievance will be deemed inappropriate if the grievant's requested relief pertains to TDOC classification matters or institutional placement.

TDOC policy directs that the "grievant shall describe the problem in detail, including times, dates, names, etc." Grievances which fail to identify the date and specific individuals

related to the inmate's complaint are deemed inappropriate per policy.

Plaintiff submitted a grievance (35849-367282) on June 17, 2024. Within the requested solution portion of Plaintiff's grievance, Plaintiff sought to be transferred to a minimum-security annex and for an incompatible to be placed on inmate Gilliam. In a decision upheld by the TDOC commissioner, Plaintiff's grievance was deemed inappropriate per policy 501.01 because the grievance sought relief related to classification matters/institutional placement.

Plaintiff submitted a grievance (35872-367509) on July 29, 2024. Within the requested solution portion of Plaintiff's grievance, Plaintiff asked that an incompatible be placed for inmate Gilliam. In a decision upheld by the TDOC commissioner, Plaintiff's grievance was deemed inappropriate per policy 501.01 due to lack of detail.

At HCCF, a handbook entitled "TDOC Inmate Grievance Procedures" is available in the institutional library for all inmates to reference when preparing a grievance and provides inmates clear instructions related to the filing and processing of grievances so that they know how to properly grieve any complaints they may have.

## **Analysis**

### **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all available administrative remedies before commencing an action related to prison conditions. The statute provides, "no action shall be brought with respect to prison conditions under section 1983 ..., or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, when interpreting § 1997e, has made clear: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). To meet this

requirement, an inmate must properly exhaust his remedies, which requires strict compliance with the grievance process provided by the prison. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). In order "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' ... rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88).

The purpose of the exhaustion requirement is to "afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525(2002); *see also Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("The point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." (quoting *Woodford*, 548 U.S. at 94–95)).

Failure to exhaust under the PLRA is an affirmative defense on which defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). Accordingly, summary judgment may be granted "only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). Because defendants also bear the burden of persuasion for this issue at trial, their "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id.* at 455–56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)).

In this case, it is undisputed that Plaintiff filed two grievances regarding the incident that

is the subject of this lawsuit. However, Defendant posits that Plaintiff failed to properly grieve the claims. In both grievances, Plaintiff, *inter alia*, (1) sought to be transferred to another facility based on contentions he asserted related to his classification and (2) asked that certain incompatibles be placed. Pursuant to TDOC Policy, an inmate grievance will be deemed inappropriate if the grievant's sought relief pertains to TDOC classification matters or institutional placement or if the grievance lacks sufficient details. As a result, both of Plaintiff's grievances were deemed inappropriate per TDOC policy.

Defendant argues that nowhere within either grievance does Plaintiff place HCCF officials on notice that he seeks any revision, change, or relief of any kind related to any CoreCivic policy — the type of relief he now seeks in this lawsuit. Instead, Plaintiff sought transfer from the facility and incompatibles to be placed. Defendant contends that, because such relief cannot be considered via a grievance, Plaintiff never properly grieved his claims. Defendant reasons that, because Plaintiff failed to comply with the PLRA prior to bringing suit, it is entitled to summary judgment.

In the order denying Plaintiff's motion to compel and for sanctions, Magistrate Judge Tu M. Pham noted that Plaintiff has filed two grievances concerning the altercation - Grievance Nos. 35849-367282 and 35872-367509. (Mag J. Ord. p. 4, ECF No. 50.) He then described the contents of the first grievance.

> Although much of the handwritten grievance is illegible, the grievance mentioned lawsuits brought against CoreCivic "due to their security" and claimed that HCCF failed to follow their policies and procedures by placing him in the same facility as Gilliam, resulting in the March 26 stabbing. He alleged that it is "an accepted practice at [HCCF] that the staff are taught to promote, instigate, [and] facilitate inmate on inmate violence." He also alleged that HCCF staff failed to "act reasonably to protect life."

(*Id.* at p. 5 (internal record citation omitted)). As noted above, neither party appealed the

Magistrate Judge's order.

"A district court should grant summary judgment only if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (citation omitted). In this case, the Court finds that there is a disputed issue of fact as to whether Plaintiff properly exhausted his administrative remedies. Although Plaintiff did ask for a transfer from the facility and incompatibles to be placed, a jury could find that he also complained that HCFF did not follow its own policies and procedures and failed to protect him. A jury could find from this that Plaintiff adequately exhausted his administrative remedies. Therefore, summary judgment is denied on this ground.

**Failure to Protect**

Plaintiff has brought an Eighth Amendment failure-to-protect claim against CoreCivic. "A private corporation that performs the traditional state function of operating a prison acts under the color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). Therefore, the Sixth Circuit applies the standards for assessing municipal liability to claims against private corporations that operate prisons. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001).

It is well-established that CoreCivic "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Thus, to prevail on a § 1983 claim against CoreCivic, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.* "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of Cnty. Commr's of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

Instead, the plaintiff "must 'identify the policy, connect the policy to the [municipal entity] itself and show that the particular injury was incurred because of the execution of that policy.'" *Graham ex rel. Estate of Graham*, 358 F.3d 377, 383 (6th Cir. 2004) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). A plaintiff may prove the existence of a policy or custom that is actionable under § 1983 in four ways:

> The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Before assessing a defendant's liability based on a policy or custom, the Court must first determine whether the plaintiff has demonstrated "a constitutional violation at the hands of an agent or employee." *Fox v. DeSoto*, 489 F.3d 227, 238 (6th Cir. 2007), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). If the plaintiff cannot show that an official acted with deliberate indifference, no constitutional injury exists to support the plaintiff's claim against the municipal defendant. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.").

Here, Plaintiff has pointed to nothing in the record showing that any facility officer violated his constitutional rights.

> [T]he Eighth Amendment's prohibition against "cruel and unusual punishments" requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer* [v. *Brennan*], 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). A failure-to-protect claim has an objective and a subjective component. *Bishop v. Hackel*, 636 F.3d 757, 766-67 (6th Cir. 2011). The objective component requires a prisoner to "show that 'he is incarcerated under conditions posing a substantial risk of serious harm,'" whereas the subjective component requires a prisoner to "show that prison officials acted with 'deliberate indifference' to [his] health or safety." *Id.* at 766 (quoting

> *Farmer*, 511 U.S. at 833-34). A prison official "is deliberately indifferent if he or she 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 766-67 (quoting *Farmer*, 511 U.S. at 837).

*Bell v. Washington*, 2025 WL 4036482, at *3 (6th Cir. Sept. 3, 2025).

In this case, there is no proof in the record that the incident was foreseeable to facility officials or that Plaintiff was deliberately exposed to an "excessive risk of serious harm" as necessary to prove his claim. *See Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 685 (6th Cir. 2024) (explaining that the "relevant constitutional 'injury' is the exposure to an objectively excessive risk"). Plaintiff has admitted that (1) he never reported any fear for his safety to any HCCF employee relating to inmate Gilliam before March 26, 2024, (2) he never had any issue with inmate Gilliam before March 26, 2024, and (3) no threat to his safety existed until the time the altercation took place on March 26, 2024. (ECF No. 40-8, PageID 331, Plaintiff's Resp. to ROG 18). Additionally, Plaintiff has presented no evidence that any HCCF staff member knew of and disregarded an excessive risk of harm to him. *See Caraway*, 98 F.4th at 686 (explaining that, even if a plaintiff can meet the objective-risk-of-harm component, he must still meet the subjective component which requires the plaintiff to allege facts permitting the reasonable inference that the defendant had notice of the risk of harm to the plaintiff and failed to reasonably respond to that risk). Because Plaintiff has not done so, his claim that his constitution rights were violated fails.

Moreover, Plaintiff has failed to establish liability based on a CoreCivic policy or custom. Plaintiff alleges that he was assaulted because HCCF has an "accepted practice that the staff are taught to promote, instigate [and] facilitate inmate on inmate violence." (ECF No. 1-1 at PageID 10.) He also alleges that fellow inmate Gilliam was known to protective custody staff

for a history of assault. Officer Stewart allegedly watched the assault without trying to help and did not call the unit team for assistance as she was trained to do but, instead, waited until the assault was over. He also complains that he was not transferred to another facility. Plaintiff continues that (1) CoreCivic "continue[s] to put profit before life in which they abandon there [sic] policy & procedures and refuses to ship inmates on protective custody when score minimum security to a minimum security facility," (2) HCCF has "several active lawsuits due to [its] security," and (3) HCCF has an "accepted practice that the staff are taught to promote, instigate [and] facilitate inmate on inmate violence." (ECF No. 1-1, PageID 10). But, he has pointed to no evidence in the record to support his allegations.

Plaintiff has not disputed that, in accordance with TDOC and CoreCivic policy and training, HCCF prohibits its employees from promoting, endorsing, supporting, condoning, furthering, excusing, tolerating, instigating, facilitating, or intentionally or willfully ignoring or disregarding inmate violence at HCCF. Any HCCF staff member who participates in any such action or inaction related to inmate violence at HCCF is subject to investigation and disciplinary action, including, but not limited to, termination. In other words, assuming as true that Officer Stewart watched Plaintiff's fight with Gilliam and did nothing, that person violated TDOC and HCCF policy. But a violation of an internal policy does not establish a constitutional violation or provide a basis for liability. In fact, a violation of the policy demonstrates the policy was not the "moving force" of the alleged action or inaction.

As for not transferring Plaintiff after the altercation, it is undisputed that CoreCivic is not responsible for nor has the authority to transfer inmates from one facility to another. Instead, only the TDOC is empowered to make inmate transfers. Moreover, "[p]risoners do not have a constitutional right to be incarcerated in any particular institution." *Ward v. Dyke*, 58 F.3d 271,

274 (6th Cir. 1995) (citations omitted). Accordingly, Plaintiff's contentions related to a desire to be transferred to another prison do not establish liability on the part of CoreCivic.

CoreCivic has pointed to its policies and procedures that are designed to protect the safety of inmates. Plaintiff has not disputed the existence of these policies and procedures. For example, if an inmate such as Plaintiff is identified as being incompatible or otherwise identified as needing to be housed in a different area of the facility from another inmate such as Gilliam, those two inmates are not housed together. Likewise, per policy, if any HCCF staff member had become aware that inmate Gilliam presented a risk of harm to Plaintiff while the two inmates were housed in GC in March 2024, one or both of the inmates would have been rehoused separately in a different area of the facility.

Additionally, officers at HCCF are trained in accordance with policy to respond to instances of inmate-on-inmate violence at the facility. HCCF policy prohibits any HCCF employee from promoting, endorsing, supporting, condoning, furthering, excusing, tolerating, instigating, facilitating, or intentionally or willfully ignoring or disregarding inmate violence at HCCF. Any HCCF staff member who participates in any such action or inaction related to inmate violence is subject to investigation and disciplinary action. If any HCCF staff member did stand by and allow an inmate fight or an inmate-on-inmate assault to continue when there was a safe means for the staff to intervene, doing so would violate HCCF policy and would subject that staff to discipline. Thus, Plaintiff cannot establish that any CoreCivic written policy acted as the "moving force" of any of the alleged constitutional deprivation in this case.

As for "a custom of tolerance or acquiescence of federal rights violations," a plaintiff may establish liability by showing the existence of a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to

constitute a custom or usage with the force of law" if that custom actually caused the constitutional violation at issue. *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). A custom or policy must be shown by "a clear and persistent pattern" of unconstitutional conduct. *Thomas*, 398 F.3d at 429. Thus, offering examples of discrete instances is not enough to reasonably draw such a conclusion. *Peet v. City of Detroit*, 502 F.3d 557, 568 (6th Cir. 2007) (concluding that three instances of misconduct is not enough to establish a "custom"); *Thomas*, 398 F.3d at 434 (holding that a plaintiff must reach beyond the facts of his case to show "several" separate incidents of the alleged rights violation to prove a "custom").

Here, Plaintiff mentioned in a grievance his belief that HCCF has had several lawsuits due to a lack of security. But even assuming that was true (and there is no evidence in the record that it is), unrelated litigation does not establish liability on the part of Defendant. *See Massey v. CoreCivic, Inc.*, 2023 WL 5917399, at *10 (M.D. Tenn. Sept. 11, 2023), *aff'd*, 2024 WL 3086518 (6th Cir. June 21, 2024) (citations omitted) ("[I]t is well established that a court "may not 'accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action.'" Here, although the FAC contains specific allegations about other incidents, lawsuits, news reports and investigations, including some incidents at SCCF, from which the plaintiff extrapolates CoreCivic's knowledge of problems at SCCF, the plaintiff does not actually draw a causal link between problems at SCCF and Lloyd's death.") Plaintiff has not specified or presented proof as to (1) when the supposed security issues are alleged to have taken place, (2) when the "lawsuits" are alleged to have been filed, (3) what any of these security issues or lawsuits entailed or have to do with this lawsuit, or (4) the outcome of any such litigation. Plaintiff's conclusory allegations are not enough to demonstrate an unconstitutional custom so as to establish liability on the part of CoreCivic.

Accordingly, Defendant's motion for summary judgment is **GRANTED**. The Clerk of the Court is **DIRECTED** to enter judgment accordingly. The motion to continue the trial (ECF No. 51) is **DENIED** as moot.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: October 29, 2026.